Nos. 17-50387, 17-50337

_____

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee,

vs.

JOSE SUSUMO AZANO MATSURA

Defendant-Appellant

_____

Appeal from the United States District Court
For the Southern District of California
Hon. Michael Anello, District Judge, Presiding

**APPELLANT'S REPLY BRIEF**

CHARLES M.  SEVILLA
CA State Bar No. 45930
402 West Broadway, Suite 720
San Diego, California 92101
Telephone: (619) 232-2222
chuck@charlessevilla.com

Attorney for Appellant Azano

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. AZANO WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF
COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Abuse of Discretion Not Holding a Hearing. . . . . . . . . . . . . . . . . . . 2

    B. The Record Is Sufficient to Reverse. . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C.  This Was Not Harmless Error. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.  THE COURT ERRED IN INSTRUCTING ON MENS REA FOR THE FOREIGN
NATIONAL CAMPAIGN FINANCE OFFENSES . . . . . . . . . . . . . . . . . . . . . . . 15

III.       THE 18 U.S.C. § 1519 COUNTS MUST BE REVERSED. . . . . . . . . . . . 21

    A. The Instructions Were Prejudicially Erroneous. . . . . . . . . . . . . . . . . 21

    B. *U.S. v. Marinello*, 138 S.Ct. 1101 (2018), and the Contemplation

    of an Investigation" Element. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    C.   No Proof Azano Caused Forms to Be Filed. . . . . . . . . . . . . . . . . . . . 24

    D.  The PAC Donation from AIRSAM (Count 33). . . . . . . . . . . . . . . . . 25

IV.  THE FIREARM POSSESSION COUNT SHOULD BE  DISMISSED . . . . 26

    A. Appellant possessed a valid visa. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    B.  Vagueness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF WORD COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Bluman v. FEC, 800 F.Supp.2d 281 (D.D.C. 2011). . . . . . . . . . . . . . . . . . . *passim*

Bryan v. United States, 524 U.S. 184 (1998). . . . . . . . . . . . . . . . . . . . . . . 16, 17

Citizens United v. FEC, 558 U.S. 310 (2010).. . . . . . . . . . . . . . . . . . 9, 11, 13, 26

City of Chicago v. Morales, 527 U.S. 41 (1999). . . . . . . . . . . . . . . . . . . . . . . 29

Colautti v. Franklin, 439 U.S. 379 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Connally v. Gen. Constr. Co., 269 U.S. 385 (1926). . . . . . . . . . . . . . . . . . . . . 28

Ellis v. Harrison, 891 F.3d 1160 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . 9

Frazer v. United States, 18 F.3d 778 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . 9

Kolender v. Lawson, 461 U.S. 352 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Mayfield v. Woodford, 270 F.3d 915 (9th Cir. en banc 2001). . . . . . . . . . . . . . 9

McCoy v. Louisiana, 138 S.Ct. 1500 (2018). . . . . . . . . . . . . . . . . . . . . . . . . . 4

TRW Inc. v. Andrews, 534 U.S. 19 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . 28

U.S. v. Alferahin, 433 F.3d 1148 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 10

U.S. v. Atalig, 502 F.3d 1063 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S. v. Aguilar, 515 U.S. 593 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

U.S. v. Benton, 890 F.3d 697 (8th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . 17-18

U.S. v. Brown, 623 F.3d 104 (2d Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . 3, 4, 14

U.S. v. Colon-Ortiz, 866 F.2d 6 (1st Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . 27

U.S. v. Curran, 20 F.3d 560 (3d Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

U.S. v. Danielczyk, 788 F.Supp. 2d 472 (E.D. Va. 2011). . . . . . . . . . . . . . . . . 17

U.S. v. Del Muro, 87 F.3d 1078 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . 4

U.S. v. Ford, 639 F.3d 718 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S. v. Goland, 959 F.2d 1449 (9th Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . 18

U.S. v. Hinkson, 585 F.3d 1247 (9th Cir. en banc 2009). . . . . . . . . . . . . . . . . . 2

U.S. v. Hsia, 176 F.3d 517 (D.C. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

U.S. v. Kernell, 667 F.3d 746 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . 21, 24

U.S. v. Marinello, 138 S.Ct. 1101 (2018). . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

U.S. v. Moore, 612 F.3d 698 (D.C. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 18

U.S. v. Orellana, 405 F.3d 360 (5th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . 28

U.S. v. Ryberg, 43 F.3d 1332 (9th Cir. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . 28

U.S. v. Steele, 733 F.3d 894 (9th Cir. 2013).. . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

U.S. v. Stein, 37 F.3d 1407 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S. v. Swanson, 943 F.2d 1070 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . 10

U.S. v. Tarricone, 996 F.2d 1414 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . 4

U.S. v. Trie, 21 F.Supp.2d 7 (D.D.C. 1998). . . . . . . . . . . . . . . . . . . . . 16, 17, 18

U.S. v. Whittemore, 776 F.3d 1074 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . 18

U.S. v. Yates, 135 S.Ct. 1074 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATUTES

8 U.S.C. § 1101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. §2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. §922. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

18 U.S.C. § 1519. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

26 U.S.C. §7212. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## REGULATIONS

22 C.F.R. §41.31(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## MISCELLANEOUS

Donsanto & Simmons, Federal Prosecution of Election Offenses (2007). . . . . . . 17

Federal Election Commission Advisory Opinion 2006-15 (TransCanada). . . . .25

Sean J. Wright, "Reexamining Criminal Prosecutions under the Foreign Nationals Ban," 32 *Notre Dame J. L. Ethics & Pub Pol'y* 563 (2018). . . . . . . . . . . . . . . . 17

Nos. 17-50387, 17-50337

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA   )
   )
       Plaintiff-Appellee,   )   CR 14-388 MMA
v.   )   Southern Dist. of Calif.
   )
JOSE SUSUMO AZANO MATSURA)
   )
       Defendant-Appellant.   )
_____)

The appellee's brief (hereafter "AB") makes factual arguments that Azano orchestrated straw donor contributions to the Dumanis and Filner campaigns. Despite the voluminous written evidence, there is no "smoking gun" showing this, nor evidence Azano knew it was illegal for a person, like himself, with a valid visa, to donate money to local campaigns. Even Dumanis's campaign chair apparently did not know this. Such recognition of the record is necessary to evaluate the prejudice from the errors in this trial: incompetent counsel, instructions failing to correctly convey intent, and prosecution for possession of an unloaded gun in a home closet under a statute with exemptions any reasonable person would find applicable to exempt Azano. For these and reasons stated below, this judgment must be reversed.

Azano, as he did in his AOB, adopts Singh's arguments on 18 U.S.C. §1519,

1

the lack of jurisdiction and First Amendment bars to this prosecution. Singh Reply, pp. 6-15, 20-30.

## ARGUMENT

## I. AZANO WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL AND HIS CONVICTIONS MUST BE REVERSED

### A. Abuse of Discretion Not Holding a Hearing.

The AB states the district court did not abuse its discretion in refusing a hearing. AB 89-97. In resolving this, the Court considers whether the court applied the correct legal standard and whether its factual findings and application of them were implausible or without support. *U.S. v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. en banc 2009). *Hinkson* requires the district court to weigh:

●"[W]hether [the court] would need to relieve the defendant's attorney" or appoint new counsel. *U.S. v. Steele*, 733 F.3d 894, 898 (9th Cir. 2013). Here, that is not required. Mr. Azano retained former counsel, Knut Johnson, who was very familiar with the case and filed an extensive motion seeking the hearing.

● "[T]he existence of evidence already in the record indicating ineffective assistance of counsel. [IAC] " *Ibid.* Substantial evidence indicated IAC.

● "The scope of the evidentiary hearing...required to fully decide the claim." *Id.* at 898. Here, perhaps Wynne's testimony might be required, although the

2

showing of ineffectiveness is already strong enough to resolve the matter without a hearing. As the district court noted, "some of the claims, Mr. Azano's counsel would say, are pretty obvious on their face, I think, and probably don't require too much analysis." 1ER 49. There was no need to hear from Mr. Wynne to explain the most prejudicial and egregious errors.

Other considerations which favored a hearing include:

1) Resolving the claim is "'particularly [warranted] when the district court is in a position to take evidence, if required, and to decide the issue.'" *Id. at 897,* quoting *U.S. v. Brown*, 623 F.3d 104, 113 (2d Cir. 2010). Having heard the motions and trial over an almost 3 ½ year period (1ER 46, 181), the court was in the ideal position to hear it. The standard assumes a hearing *might* be required, but a hearing requirement alone presents no basis to deny the motion. At worst, all that remained was an "evidentiary hearing...to fully decide the claim." *Steele*, *supra* at 898.

2) The impact of not hearing the motion unjustly delays and prejudices Azano who is imprisoned and must await some future opportunity to raise the issue. *Id.* Azano has been in custody since sentencing on October 27, 2017.

3) "Lengthy delays necessarily entail concomitant weakening of memories and aging of evidence." *Id*. at 897. To paraphrase Emerson, time turns to shining ether the solid angularity of fact. The prime witness would be Mr. Wynne. Delays of

months or years do not serve the interests of ensuring accurate recall.

4) The judge who tried the case has firsthand experience which could be lost if a new judge is needed to learn the lengthy record.

The AB argues the record was not developed to enable the court to resolve the "multiple and varied ineffective assistance of counsel claims being asserted by Mr. Azano." 1ER 48; AB 90. This is asserted because the determinations "would require...an examination of the reasons and motives for certain actions taken or not taken by Mr. Wynne." 1ER 48-49. The district court stated it would be "hard-pressed to make any findings on those issues," and the AB argues a lengthy evidentiary hearing and "many proceedings" would be required. AB 91. This was speculation. Some claims are reversible without a hearing.[1] The AB does not defend any of them, but rather relies entirely on the lack of abuse of discretion argument.

This Court has said there are special cases where IAC should be resolved on direct appeal. This is one of them. The conduct was so egregious that the errors involving counsel's conduct "inevitably signal fundamental unfairness." *McCoy v. Louisiana*, 138 S.Ct. 1500, 1511 (2018). The conduct is so inimical to Azano and to

---

[1] Cases reversing orders refusing to hear IAC issues at a motion for new trial include *U.S. v. Brown*, supra at 113-115; *U.S. v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993) (defendant entitled to a hearing after showing "he has a 'plausible' claim of [IAC]"); *U.S. v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996).

one's sense of justice, it warrants a presumption of prejudice. See AOB 40. For example:

**1.** Making racist, degrading opening statements aimed at Azano: he "doesn't look like any of you." "He's a Mexican American of Japanese descent" with a little "poppy nose" (2ER 9).[2] Jurors, he said, "may have it in your gut that somebody did something wrong because of what this guy looks like" (2ER 16-17), adding his personal dislike for Azano: "At the end of the day, I am glad to get away from him. I was upset when he showed up in my room last night with some ideas. I want to get away from this guy. He's intense. He is a successful businessman. He's got a little poppy nose. Tough to look at him. I don't like him." *Ibid.* See AOB 21. This is IAC per se. The AB does not address it, and does not grapple with any of Wynne's outrageous statements about Azano. Rather, the AB speculates that Azano, as an "alpha male" was deeply involved in his defense and thus perhaps agreed to his denunciation by his counsel. AB 89-90. This is flatly contradicted by Azano's motion for new trial decrying these statements. Had the hearing taken place, Azano could have testified that the offensive actions by Wynne were nothing he endorsed. It is thus quite wrong to suggest Wynne's misconduct was at Azano's instructions. AB

---

[2] He also tells the jury, "Mr. Singh is a Sikh. He doesn't look like you and me either, okay?" 2ER 9.

5

89-90.

This is an extraordinary case in which counsel had his client stand up like an exhibit to be demeaned for his racial features and supposed ugly appearance, saying he doesn't like him, can't wait to get away from him, that he's a "bad guy," and the jury won't like him either, and maybe they will think he did something wrong because of what he looks like. 2ER 27. This was IAC and reversible per se.

**2.** After getting an order excluding evidence of federal investigations of appellant, Wynne told the jury about years of investigations into "Narcotics trafficking, bribery, extortion, taxes." See AOB 21- 22. The judge *excluded* this material at Wynne's request prior to trial. Then, Wynne needlessly, foolishly and prejudicially brought bad "evidence" to the jury's attention.

Long prior to trial, the government filed a pleading chronicling various investigations that came to naught. Azano's prior attorney, Mr. Johnson, convinced the court and the government to strike pages of that pleading. Azano Supp. Excerpts [AzSER] 10-11, 17-21.[3] The government conceded this was "generally irrelevant to the pending indictment." AzSER 17. Wynne himself got it excluded but then

---

[3] In response to Mr. Johnson's pleading that the statements were "false, wild and unsubstantiated" and "scandalous," the government refiled the pleading blacking them out. AzSER 10.

incomprehensibly told the jury about it. Again, IAC per se.

**3**. After interjecting previously excluded bad evidence, Wynne excluded helpful testimony, to wit, that of a long-time former FBI Agent,[4] San Diego County Sheriff, and Dumanis Campaign Finance Director, who indicated he did not know whether a foreign national legally in the U.S. could donate to campaigns. See AOB 24. If a long-time federal agent and Dumanis Campaign Finance Director did not know this, it would be easy for the jury to understand appellant wouldn't either. Lack of knowledge was a key defense. Again, IAC per se.

**4.** After the government alerted him in opening statement about the $700 check Azano wrote *in his own name* to "Re-Elect Bonnie Dumanis" early in 2013, Wynne tried and failed to introduce it. See AOB 24-25. The evidence refuted that appellant knew it was illegal to donate. At the end of trial, Wynne incompetently *tried to get the check admitted* hoping for a stipulation from the government "as a professional courtesy." 3ER 127. Wynne told the jury a "crucial" issue was Azano's lack of knowledge and willfulness. SER 4831. Failing to introduce relevant, exculpatory evidence was IAC per se. The above claims warrant reversal without a

---

[4] Bill Gore "spent 32 years in the FBI, where he rose to the level of Assistant Director. He served as Special Agent in Charge (SAC) of the Seattle and San Diego Field Divisions." https://www.sdsheriff.net/commandstaff/gore.html

need for a hearing.

Other IAC claims that might warrant Wynne's explanation at a hearing include:

**1.** Why fail to produce evidence Azano was giving large sums of money to charitable endeavors to show that Azano freely gave money when people like Encinas asked for it. See AOB 25-27. E.g., Azano loaned Marc Chase three million dollars unsecured, which Chase said was "very generous." 2ER 278-280.

**2.** Why call Ivan Ortega only to have his testimony struck. See AOB 27-30. Wynne himself noted that this result was "drastic and in fact prejudicial." 3ER 104-105. It was prejudice of his own making. Presenting favorable testimony is a good idea, when done competently. Wynne failed miserably to the prejudice of his client.[5]

**3.** Why in final argument tell the jury the government thrice caught him "bluffing" with witnesses. See AOB 30-31. These were admissions of deceitful conduct in an attempt to distort evidence, permitting the prosecutor to tell the jury Wynne admitted he was "putting forth to the witness spurious defense arguments. He was bluffing you [the jury]," and did it "throughout the course of the trial he got caught bluffing. Caught red-handed...." SER 4957.

---

[5] Ortega testified to the court that FBI Agent Drickerson *never* spoke to Azano about whether it was "lawful for him to have a personal firearm". 3ER 99a-100. Yet, that was why Ortega was proffered and called--to say Drickerson told Azano he could have a gun for protection. See AOB 28.

**4.** Why gratuitously insult the trial court with accusations of unfairness and threaten to file a baseless recusal motion? Why argue prosecution misconduct for mentioning an issue Wynne himself told the jury about in opening statement? Why deal with a favorable witness with hostility and not emphasize the most exculpatory aspect of her testimony? See AOB 32. Why, after the court ruled that *Citizens United v. FEC*, 558 U.S. 310 (2010), was irrelevant, continually bring it up and be repeatedly overruled? Why twice tell the court in Azano's absence that he was "a very litigious client" who "asked me to sue every other lawyer he has ever had." See AOB 31-36.

The AB does not respond to specifics of these claims. Most pointedly, it fails to address the outrageous opening statements and Wynne's disparaging racist comments about his client which are IAC per se. See *Ellis v. Harrison*, 891 F.3d 1160, 1165 (9th Cir. 2018); *Frazer v. United States*, 18 F.3d 778, 783 (9th Cir. 1994); *Mayfield v. Woodford*, 270 F.3d 915, 924 (9th Cir. en banc 2001).

No juror could be persuaded to fairly assess evidence after the damage Wynne did to the case. By such actions, no juror could be persuaded to acquit. Wynne functionally withdrew his client's defenses.

The AB suggests collateral review is the best forum because it provides for the development of a factual record. AB 92. But the trial record was largely transcribed already and the motion provided the basis for developing further evidence, if needed.

9

The AB notes the "attended efficiency costs of developing an adequate record while awaiting sentencing" (AB 92), but the near five months between the denial of the motion on June 1, 2017, and sentencing on October 27, 2017, afforded plenty of time to handle the matter. The record was not "sorely" lacking. AB 92. The court heard the pre-trial motions, the trial, and it knew of Wynne's unprofessional conduct; it had before it the incompetency issues briefed and supported by the record.

It is thus Orwellian to claim the failure to hear the motion served the "interests of justice and judicial economy." AB 91, 93, 95. It has now been a year and one-half since appellant's motion was denied. Azano sits in prison. Justice delayed is justice denied.

B. The Record Is Sufficient to Reverse. This Court has held "that a defendant need not wait for collateral proceedings to obtain relief from an ineffective attorney where: 1) the record on appeal is sufficiently developed to permit determination of the issue, **or** (2) where the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel.' [Citations]." *U.S. v. Alferahin*, 433 F.3d 1148, 1160, fn. 6 (9th Cir. 2006) (bolding added.) See *U.S. v. Swanson*, 943 F.2d 1070, 1072 (9th Cir. 1991) (reversal on appeal where counsel conceded there was no reasonable doubt: this final argument was an "abandonment of his duty of loyalty to his client by assisting the prosecutor also created a conflict

10

of interest." *Id.*, 1075.) Wynne's opening statements alone established such a conflict to warrant a presumption of prejudice.

As shown in Azano's opening brief, he meets both of the *Alferahin* criteria, but most assuredly the second.

C. This Was Not Harmless Error. The AB meritlessly claims Azano had a "carousel of attorneys Azano dispatched in his defense [who] faced a hopeless task." AB 96.[6] The AB cannot diffuse Wynne's responsibility for what happened at trial. It was his trial. The purported "carousel" amounted to Knut Johnson who appeared at Azano's initial arraignment on 2/20/2014, along with three attorneys who made special appearances that day and never appeared again. 3ER 180. Johnson served as lead counsel for the next two years, but withdrew shortly after Wynne appeared on 3/25/2016. 3ER 201. Other than an attorney who helped Johnson with some pre-trial motions (3ER 185), and another who appeared at the end of trial to help Wynne argue instructions[7] (3ER 222), that was the extent of representation to the conclusion of the trial. (For the later firearm count retrial, Johnson appeared again joined by Charles

---

[6] The docket shows the government had at least eight attorneys on the case: 3ER 187, 227, 200, 202, 180, 181.

[7] This was necessary because, as co-counsel told the court when arguing *Citizen's United*: "Nobody is going to argue the law. In fact, I don't think Mr. Wynne would be able to navigate the law in that." SER 4703.

LaBella. 3ER 238, 249.)

This was no "overwhelming evidence" case. AB 97. Azano had defenses to both the donations for Dumanis and Filner, albeit ineptly presented. The Chase donations in the fall of 2012 show that Encinas directed Chase to make the specific donations, as Chase testified. According to Chase, Azano asked him to make an unspecified $180,000 contribution for which he would be reimbursed. Encinas was to discuss the specifics of where or to whom they would be directed. 2ER 261-262. Thereafter, Encinas came to Chase's business and instructed him to write three checks: to Filner, the DCCC, and the San Diego Democratic Party. AOB 15-16. Wynne defended the Chase money as going to pay for a car purchase. But even if that defense was apparently rejected, the Chase testimony supported a lack of Azano's willfulness on campaign donations.

Willfulness was a defense to all counts. The proposed defense instructions quoted *Bluman* as requiring "proof of the defendant's knowledge of the law." 3ER 123; 1ER 134d. Co-counsel for Azano argued a willful violation of the federal law was required. 3ER 123-124. Singh added: "They must prove beyond a reasonable doubt that Mr. Singh knew that Mr. Azano was prohibited by the federal election laws from contributing...." 3ER 114. See AOB 44 and 46, fn. 26. The record supported defenses of lack of knowledge of donations and/or lack of willfulness.

12

Further to the knowledge defense, in arguing for judgment of acquittal, Singh argued the "Government must prove that he knowingly and willfully violated federal election law. Specifically, the federal election law that prohibits foreign national contributions." SER 4099. Wynne "[j]oin[ed] Singh's arguments. SER 4106. He argued "there has been insufficient evidence presented to allow this case to go to the jury on the 1519 count[s] because there is no evidence of intent." SER 4107. "And it is likely, it is a matter [per *Citizens United*] that I will argue on mens rea." SER 4123. On the AIRSAM $100,000 PAC donation, Count 33 (discussed *infra*) Wynne put on an accountant to verify Azano signed the check. SER 4345. He argued to the jury, "If you're trying to keep a secret, why use Airsam, Susumo Azano Matsura? That's just about the worst way to keep a secret there is." SER 4812.

The clincher that lack of intent was a crucial and viable defense was when Wynne told the jury: "the most crucial instruction that you will hear and that is knowingly and willfully...There is no knowledge element. There is no willfully." SER 4831. The evidence of Azano's intent to violate the federal law was weak at best.

This contradicts the AB assertion the evidence was overwhelming. It took the jury five days to return verdicts. 3ER 223-225. And for all the "terabytes of discovery" (AB 95), numerous taped calls, thousands of texts and emails, none show Azano knew it was illegal for him to donate or that he directed donors how to fill out

13

contribution forms. If the government had such evidence, it would have produced it.

The fact that there were straw donors to the two campaigns did not establish Azano's conscious understanding that he was not permitted to donate. The circumstantial evidence shows Azano wanted to be anonymous as a donor, save for the AIRSAM contribution. It does not prove "overwhelmingly" he knew it was a violation of law to donate. If he was a sophisticated law dodger as the AB implies, he could have simply had his U.S. citizen wife or son make the donations.

Azano never had a chance to prevail with the jury on the issues after his attorney told the jury he was a "bad guy" whom they wouldn't like, whom he didn't like, and that they might convict based on his bad guy looks. His ineffectiveness was an intolerable affront to his client and justice. It warrants reversal on appeal.[8]

---

[8] Azano should not be relegated to discretionary 28 U.S.C. 2255 relief. If the court does not reverse outright, it should remand for an evidentiary hearing on the motion for new trial. *U.S. v. Brown,* 623 F.3d 104 114-115 (2d Cir. 2010).

## II.  THE COURT ERRED IN INSTRUCTING ON MENS REA FOR THE FOREIGN NATIONAL CAMPAIGN FINANCE OFFENSES [9]

The AB quotes the statute: "Any person who knowingly and willfully commits a violation of any provision of this Act...."  AB 47.  Does the willfulness element require the defendant to know he is violating the prohibition of the law concerning a foreigner making contributions to campaigns, or, is it sufficient for the court to instruct, as it did: *"*It is not necessary for the government to prove that the defendant was aware of the specific provision of the law that he is charged with violating. Rather, it is sufficient for the defendant to act knowing that his conduct is unlawful, even if he does not know precisely which law or regulation makes it so*."*  1ER 60-61; SER 5214-17.

A short answer is *Bluman v. FEC,* 800 F.Supp.2d 281, 292 (D.D.C. 2011), aff'd, 132 S.Ct.1087 (2012), cited as binding at AB 44:

---

[9] Contrary to the AB at 48-49, fn. 11, Azano and Singh did argue for the *Bluman* knowledge of the law instruction.  See AOB 46, fn. 26.  They argued the instruction "will require proof of the defendant's knowledge of the law. So it's not just knowledge of when you are doing something wrong, it's knowledge of something a little more specific, the law." SER 4727; 3ER 123-124.  See also Azano's proposed instruction: "you must find that the defendant acted with knowledge that his course of conduct was unlawful and with intent to do something that the law forbids," and, citing *Bluman*, that this **"will require proof of the defendant's knowledge of the law."**  SER 5337 (bolding in original).

15

we caution the government that seeking criminal penalties for violations of this provision - which requires that the defendant act "willfully," see 2 U.S.C. §§ 437g(a)(5)(C), 437g(d)(1)(A) - <u>will require proof of the defendant's knowledge of the law</u>. See *United States v. Moore*, 612 F.3d 698, 702-04, 391 U.S. App. D.C. 413 (D.C. Cir. 2010) (Kavanaugh, J., concurring); see also *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed. 2d 608 (1994). <u>There are many aliens in this country who no doubt are unaware of the statutory ban on foreign expenditures, in particular</u>. Underscoring added.

*Bluman* is outside the realm of routine criminal cases or even those involving domestic campaign violations (see citations at AB 51, n.11), and into the "highly technical" category cited in *Bryan v. United States*, 524 U.S. 184, 194-95 (1998). For the target group, this statute is both foreign and highly technical in its requirements, as noted in *U.S. v. Trie*, 21 F.Supp.2d 7, 15 (D.D.C. 1998):

> In this case, the government therefore must prove that Mr. Trie knew of the DNC's obligation to report all contributions over $200 to the FEC. ¶ Such proof is especially required in the federal election law context where the statutory and regulatory schemes are complex and technical and proscribe behavior that an ordinary person would not know is criminal. See *United v. Ratzlaf*, 510 U.S. at 143-44; *United States v. Curran*, 20 F.3d at 568-69.[10]
> \* \* \* \* \* \* \* \* \* \* \*
> When Congress amended FECA in 1976 to centralize the criminal penalties for violations of the Act, it was acutely aware that the combination of the nature of the statute, which criminalizes activity that is not inherently evil, and the complexity of the statute, which imposes

---

[10] *U.S. v. Curran*, 20 F.3d 560, 570 (3d Cir. 1994) ("jurors should have been told that to convict defendant, the government had to prove that he knew that the treasurers had such a duty").

16

highly technical reporting requirements, presented the risk that non-culpable people might be prosecuted. *Id*. at 15.

As stated in *Federal Prosecution of Election Offenses* (2007) Donsanto & Simmons, pp. 134-135:

> Criminal violations of federal campaign financing laws require proof that the conduct was committed "knowingly and willfully." In the context of a regulatory scheme such as is involved here, these words of specific criminal intent require proof that the offender was aware of what the law required, and that he or she violated that law notwithstanding that knowledge, i.e., that the offender acted in conscious disregard of a known statutory duty or prohibition. *United States v. Curran*, 20 F.3d 560 (3rd Cir. 1994); *National Right to Work Committee v. Federal Election Commission*, 716 F.2d 1401 (D.C. Cir. 1983); *AFL-CIO v. Federal Election Commission*, 628 F.2d 97 (D.C. Cir. 1980).[11]

AB, p. 51, states all courts have applied *Bryan* to section 30109.  Not so.  The AB cites *U.S. v. Trie*, quoted above, which doesn't support the proposition.  *U.S. v. Hsia*, 176 F.3d 517 (D.C. Cir. 1999) involves a 18 U.S.C. §2(b) and §1001 prosecution and is pre-*Bluman*.  *U.S. v. Danielczyk*, 788 F.Supp.2d 472, 490 (E.D. Va. 2011), notes: "Campaign contributions laws are not so complex or surprising that the *average citizen* would likely be trapped by them."  Italics added.  *U.S. v. Benton*, 890

---

[11]  Sean J. Wright quotes the above passage in "Reexamining Criminal Prosecutions under the Foreign Nationals Ban," 32 *Notre Dame J. L. Ethics & Pub Pol'y* 563, 574 (2018).  Wright knows of what he speaks: he is an attorney in the FEC's Office of General Counsel.

F.3d 697, 715 (8th Cir. 2018), does not deal with the foreign contributions statute and does not mention *Bluman* or *Trie*. Reliance on *U.S. v. Whittemore*, 776 F.3d 1074 (9th Cir. 2015) (AB 48, 51), as noted at AOB 48, is unhelpful in that the case does not deal with instructions on foreign nationals and the lack of a specific intent requirement. *But see U.S. v. Goland*, 959 F.2d 1449, 1454 (9th Cir. 1992) (upholding an instruction requiring "Mr. Goland had the required specific intent to violate the law charged in this indictment.")

AB, at p. 53, states *Bluman* cites *U.S. v. Moore*, 612 F.3d 698, 703 (D.C. Cir. 2010), a false statement case under 18 U.S.C. § 1001. But, "Moore did not contend that the term 'willfully' in § 1001 requires proof of the defendant's knowledge of the law, and he did not challenge the jury instructions on that basis. *Id*. at 612 F.3d 698 (concurring opinion).

The Error Was Prejudicial. See AOB pp. 50-53. AB 54, fn. 14, dismisses the Azano's argument the jury could have applied the too-broad willfulness instruction to convict based on using *prosecution evidence* involving local law violations. Exhibit 14-1, found municipal code violations of Michael Pedace for his contribution to the Dumanis campaign with money from Chase. SER 734; see AOB 50-51. The decision stated Pedace "was acting as an intermediary for Azano, a fact that was not disclosed to the Dumanis Mayoral Committee...." 1ER 135. Further, he "was aiding

and abetting Azano in the making of a separate $500 contribution using Respondent's spouse as an intermediary." 1ER 136. In doing so, Pedace violated San Diego Municipal Code sections 27.2944 and 27.2991, which prohibit contributions on behalf of someone else without disclosing the true source of the funds, and by aiding and abetting Azano in his spouse's donation. These same two transactions are two section 1519 counts, Counts 30, 31; 1ER 75. This evidence could easily have been used under the broadened willfulness instruction for Count 3 to include "a [prohibited] contribution...in connection with a Federal, State, *or local election*." 1ER 60; italics added. Further, the jury could have assumed if this local law applied to the Pedace, it applied to all similar contributions attributed to Azano. That proposition is further supported by the testimony of Stacey Fulhorst, Executive Director for the San Diego Ethics Commission, who testified about local election laws (SER 409-411), and the contributions to the Dumanis and Filner campaigns. SER 418-449. She testified hidden campaign disclosures may be referred to the City Attorney for misdemeanor prosecution. SER 491. Several prosecution witnesses testified that they were fined by the Commission for donations reimbursed by Chase (Grossman, SER 696; Sean Hughes, SER 719-720; Pedace, *supra*.) Grossman and his wife were Counts 26, 27, SER 672; Hughes and his wife were Counts 22-23, SER

19

707.[12]

The evidence of these ethics and local campaign law violations were surely part of the jury consideration in determining the unlawful component of the willfulness element. Counts 1, 3 and 4[13] must be reversed for misstating the element which gave the jury this improper path to convict. The AB has not shown the error harmless beyond a reasonable doubt.

---

[12] The AB itself, at p.66, cites evidence of local ordinances (Municipal Code §§ 27.2930, 27.2931) requiring campaigns to report services rendered to campaigns.

[13] Count 4 is impacted because the same willfulness instructions were given for that count. SER 5221-5224. Those instructions on elements 1-3 do not specify federal elections except in a definitional paragraph of "contribution" and describes two types of contributions: donations to a federal election OR "payment by any person of compensation for the personal services of another person which are rendered to a political committee without charge for any purpose." *Ibid*. The latter contribution covers *all* contributions the government presented on donations and in-kind contributions.

## III.    THE 18 U.S.C. § 1519 COUNTS MUST BE REVERSED

A. <u>The Instructions Were Prejudicially Erroneous.</u>  See AOB 54-55.  The AB,

at p. 65, fn 20, relies, ironically, on a case holding specific intent is required for 1519

prosecutions:

> Congressional statements about § 1519 strongly support  the argument
> that **Congress intended a specific intent to apply throughout § 1519.**
> "[T]he intent required is the intent to obstruct, **not some level of
> knowledge."** 148 Cong. Rec. S7418, S7419 (daily ed. July 26, 2002)
> (statement of Senator Leahy).

*U.S. v. Kernell*, 667 F.3d 746, 752-53 (6th Cir. 2012)(bolding added.)

After instructing the jury the government must prove a "knowing" act and that

the "defendant acts with the intent to impede, obstruct or influence an actual or

contemplated investigation" within FBI jurisdiction (1ER 71), the instruction then

says for a "knowing" act the "government is *not* required to prove that the defendant

knew that his act or omissions were unlawful." 1ER 71.  In contradiction, "causing

the falsification" means the act must be done "willfully" which is acting "with

knowledge that some part of his course of conduct was unlawful." 1ER 72.  Thus, the

"knowing" definition removed the requirement of an intent to violate the law.   See

*U.S. v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994) (reversing for use this "knowledge"

instruction).   Further, the "willfulness" definition possesses the same problem

discussed in the previous argument by permitting convictions based on local ethics

ordinances.[14]

B. *U.S. v. Marinello,* 138 S.Ct. 1101 (2018), and the "Contemplation of an Investigation" Element.

*Marinello* adopted "the approach we have taken in similar cases" such as *Yates v. United States*, 135 S.Ct. 1074 (2015), interpreting section 1519 prohibiting the destruction, concealment, or covering up of records. *Marinello*, supra at 1109. *Marinello* reversed a tax conviction for 26 U.S.C. §7212(a) violations, limiting an expansive application of the "Omnibus Clause" which forbade "corruptly ... imped[ing], or endeavor[ing) to obstruct or impede the due administration of [the Internal Revenue Code]." Marinello was charged with obstructive acts. The trial court failed to instruct that to convict the jury had to find he knew he was under investigation and intended to corruptly interfere with it. After the conviction, the Second Circuit affirmed holding that a defendant need not possess "an awareness of a particular [IRS] action or investigation."

The Supreme Court reversed, holding held the government had to show a

---

14 At AB 66-67, fn. 21, the government sidesteps the "knowing" problem and relies on the jury basing its verdict on "willfulness." Three problems with this: 1) it is speculation to say the jury relied on one part of an instruction and not another; 2) the willfulness instruction incorporates the defective "knowledge" component; 3) the government relied on *all* instructions, telling the jury the "instructions always control." SER 4766.

"nexus" between the defendant's conduct and a particular administrative matter, that is, the defendant's act must be related in time, causation, or logic with the proceedings. *Marinello,* supra at 1106. See *U.S. v. Atalig*, 502 F.3d 1063, 1068 (9th Cir. 2007)(requiring a showing in a section 1001 prosecution of a "direct relation" between the falsity of the statements and the federal agency's "statutory function" relating to the statement.) See also *U.S. v. Ford*, 639 F.3d 718, 721 (6th Cir. 2011) ("Ford only breached disclosure duties owed to entities controlled, funded, and administered by the State of Tennessee. There is no controlling authority, from the Supreme Court or otherwise, to support the proposition that a state official is liable under section 1001 for the violation of a state law duty to disclose.") Similarly, here there was no proof of the required nexus between the conduct concerning local campaign donations and a "contemplated" FBI investigation.

AB 74 states this was an investigation "within the jurisdiction" of the FBI. 1ER 71.[15] *Marinello* states: "In addition to satisfying this nexus requirement, the Government must show that the proceeding was pending at the time the defendant

---

[15] To support this, AB 74 cites FBI agent Cook's testimony that the FBI has a public corruption squad that investigates corruption of state and local officials, elections and "campaign finance fraud." This vague, cryptic statement is the basis for federal jurisdiction. The needed direct nexus between the omissions in the local contribution forms and federal authority is unproven by such testimony.

engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant." *Marinello* at 1110. If the defendant lacks knowledge his actions are likely to affect the proceeding "he lacks the requisite intent to obstruct." *Aguilar,* supra at 593 (1995). As *Marinello* states: "The proceeding must at least be in the offing." *Marinello* at 1110. *Marinello,* relying on *Yates* and other obstruction cases for guidance, supports Azano's position: there was no investigation ongoing, pending or reasonably foreseeable, and no proof of an intent to obstruct.

AB relies on *U.S. v. Kernell*, 667 F.3d 746, 755 (6th Cir. 2012), to say that conduct, if taken in contemplation of a matter that *"may occur in the future,"* is sufficient. AB 72. *Kernell* admits "this interpretation makes 'in contemplation' under § 1519 very broad." It is, and it is inconsistent with *Marinello.* Applying *Marinello,* there was both a lack of evidence on an impending or reasonably foreseeable federal investigation into the local contributions or intent to obstruct.

### C.   No Proof Azano Caused Forms to Be Filed

AB 73, fn. 24, states: "Each of those actions [by Singh] also supply evidence that Azano caused the campaigns to file false disclosure reports. For the straw donors, they each submitted—at his behest—donation forms with their names on it, not Azano's." Actually, except for Chase's testimony, none of the straw donors even spoke with Azano. They made their donations at the request of Encinas, Lugo,

24

Wolters or Hester.  See AOB pp. 6-7.  Chase did not talk to Azano about to whom to contribute or about form filing. Encinas told him to whom he should write checks, and Encinas had his own agenda to make himself important with local officials in order to get a new Chief of Police.

D.  The PAC Donation from AIRSAM (Count 33).  AB, p. 46, fn. 9, dismisses the argument this donation was legal, stating: Azano "was prosecuted because he used Airsam—just as he used the dozens of $500 straw donors—to launder his own foreign funds into United States elections. The money donated was not from Airsam, but Azano. The false entry on the disclosure record provides the basis for the prosecution, not the actual donation."

Not so. The PAC accurately reported the donation (2ER 88) from AIRSAM which made the lawful donation. AIRSAM was a longtime, successful and legitimate income producing business.[16]  As CEO of AIRSAM, Azano provided funding for AIRSAM. His  position with AIRSAM was easily found in state records.  AB 18, 23. See AB,  p. 22, the contribution "could [and easily did]  trace back to Azano."

Such a corporate contribution is legal. The FEC's Advisory Opinion 2006-15 (TransCanada), states that domestic subsidiaries of a foreign national corporation can

---

[16]  According to Azano's accountant, AIRSAM made "15,000, 12,000 a month."  SER 362-363.

make "corporate donations and disbursements" in state and local elections.[17] The dissent in *Citizens United* acknowledged this stating the majority opinion, "would appear to afford the same protection to multinational corporations controlled by foreigners as to individual Americans." *Citizens United*, supra 424. This legal contribution accurately stated its source, was duly reported, the ownership records were transparent, and Count 33 must be reversed.

## IV. THE FIREARM POSSESSION COUNT MUST BE DISMISSED[18]

**A. Appellant Possessed a Valid Visa** "properly issued to an alien as an eligible nonimmigrant by a competent officer." 8 U.S.C. §1101(a)(26). Further, 18 U.S.C. §922(y)(2) provides that the §922(g)(5)(B) prohibition does "not apply to any alien who has been lawfully admitted to the United States under a nonimmigrant visa, if that alien is ... (A) admitted to the United States for lawful hunting **or** sporting purposes." Regulations permit visa holders to engage in "legitimate activities of a recreational character, including tourism, amusement...." 22 C.F.R. §41.31(b)(2).

The AB observes that the "sporting purpose" statutory exception (and the "recreational" or "amusement" regulations) can permit *lawful* possession of a firearm

---

[17] Quoted at p. 575 in Wright, *supra*, page 17 fn. 11.

[18] The empty gun was found in a bedroom closet alongside a clip of bullets. AzSER 30a; cf. AB 98.

with a visa. It acknowledges that "sporting" includes such things as target or skeet shooting. But the AB contends appellant's interpretations of "sporting purpose" (or recreational or amusement purposes) are "untenable." AB 100. It appears to argue that there must be some visa admission process noting the visa holder will engage in such activities as target shooting and the like. AB 101. Not so.

The government conceded below, "there is not necessarily a separate hunting or sporting purpose visa" in existence. AzSER 30. Thus, there is no special application to be filed with visa papers for firearm possession purposes of target shooting or the like. One who has a visa has a legal right to engage in sporting, recreational and amusement purposes which includes lawful gun possession. Indeed, a common interpretation of shooting purposes is "recreational."[19]

Reliance of legislative history at AB 101, is not dispositive. In fact, it begs the question. Also, lay people cannot be expected to read transcripts of Congressional discussions. Further, the passage quoted does not address the rest of the statute and regulation permitting visa holders to engage in sporting, recreational and amusement activities. A statute is judged on its face (*U.S. v. Colon-Ortiz*, 866 F.2d 6, 9 (1st Cir.

---

[19] "Shooting sports is a collective group of competitive and recreational sporting activities involving proficiency tests of accuracy, precision and speed...." https://en.wikipedia.org/wiki/Shooting_sports.

1989)), and "ought...to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotes omitted). Courts should decline to render any "express exception ... insignificant, if not wholly superfluous." *Id*. (internal quotes omitted).

"[C]riminal statutes, including even regulations creating petty misdemeanors, are to be strictly construed; and that [if] in doubt as to the law, we should follow the rule of lenity." *U.S. v. Ryberg*, 43 F.3d 1332, 1334 (9th Cir. 1995). Here, the Court cannot say "with certainty that Congress intended to criminalize the possession of firearms by aliens who have been granted" visas. *U.S. v. Orellana*, 405 F.3d 360, 371 (5th Cir. 2005).

**B. Vagueness**.  The district court assessed this issue as not "black and white." 1ER 104.  Yet, "'[t]he crime...must be so clearly expressed that the ordinary person can intelligently choose, in advance what course it is lawful for him to pursue.'" *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 393 (1926). It must be "black and white."[20] This is all the more true where the statute, as the government stated below,

---

[20] Cf., AB 102: "A person of ordinary intelligence would understand that the 'sporting purpose' exemption applies to sport involving guns or hunting...."  If the visa exemption is so interpreted, then Azano is covered by it.

has no mens rea element: "This is not an intent statute." AzSER 24. Courts have "long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979). This one does not.

Further, a law cannot not "afford[] too much discretion to the police and too little notice to citizens...." *City of Chicago v. Morales*, 527 U.S. 41, 64 (1999). That is what this law does. The government told the court the sporting purpose exemption should be declared upon entry: "There has to be some sort of factual documentation…perhaps ...when they explain to the CBP [Customs and Border Patrol] officer when they were entering the United States is that I'm coming for hunting or sporting purposes…there needs to be some documentation associated with that." AzSER 25. But the law contains no such statutory or regulatory provisions by form or oral declaration. *Id.* at 40-47. With no form to check, this leaves the recordation of a shooting purpose to the unbridled discretion and whim of the CBP officer. Further, how is the visa holder to know a declaration is required?

*Kolender v. Lawson*, 461 U.S. 352, 358 (1983), declared a statute unconstitutionally vague which required providing "a credible and reliable identification and to account for their presence, when requested by a peace officer." It contained no standard for determining what a suspect had to do in order to satisfy

29

the requirements. Such a statute vesting complete discretion with the police was void. So too here.

For the above reasons, the firearm possession count must be dismissed.

## CONCLUSION

Appellant respectfully requests that the judgment must be reversed.

December 4, 2018                    Respectfully submitted,

*s/Charles M. Sevilla*
CHARLES M.  SEVILLA
Attorney for Azano

## CERTIFICATE OF WORD COMPLIANCE

This brief is double and proportionally spaced in 14 point Word Perfect Times Roman and, according to WordPerfect 16 software, contains 6,980 words.

December 4, 2018                     *s/Charles M. Sevilla*
Charles M. Sevilla
Attorney at Law

No. 17-50387
No. 17-50337

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | CR 14-388 MA |
| v. | ) | Souther Dist. of Calif. |
| | ) | |
| JOSE SUSUMO AZANO MATSURA) | | |
| | ) | Certificate of Service |
| Defendant-Appellant. | ) | |
| _____ | ) | |

I hereby certify that I electronically filed the foregoing appellant's reply brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 4, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

December 4, 2018                    s/  Charles M. Sevilla